## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RAYMOND MALARA, III,
      Prisoner,

v.
                                Case No. 8:23-cv-742–KKM–AAS
                                Case No. 8:21-cr-66-KKM-AAS

UNITED STATES OF AMERICA,
      Respondent.
_____

### ORDER

Prisoner Raymond Malara, III, moves to vacate his conviction and sentence for distribution and possession with the intent to distribute cocaine, fentanyl, and marijuana, for which he is serving a 108-month sentence. *See* 28 U.S.C. § 2255. Malara claims his counsel was ineffective. Because his claims lack merit, his motion to vacate is denied.

## I.    Background

A two-count indictment charged Malara with distributing and possessing with intent to distribute cocaine, fentanyl, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count One), and possessing firearms and ammunition after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Two). (Crim. Doc. 23.) Under a plea agreement, Malara agreed to plead guilty to Count One in exchange for the United States moving to dismiss Count Two from the indictment. (Crim. Doc. 47 at 1–2 and 6.) As part of that plea agreement, Malara waived his right to appeal his sentence. (*Id.* at 12–13.)

Malara admitted the following factual basis as part of his plea agreement (Crim. Doc. 47 at 15–16):

> Between October 2020, and February 2021, Raymond Malara and several co-conspirators were captured on judicially authorized wire intercepts discussing the purchase, distribution and sale of controlled substances. Throughout these calls, and others, agents identified Malara as a cocaine trafficker.
>
> On January 21, 2021, agents executed a federal search warrant at Malara's apartment. Inside, agents located multiple items consistent with large scale drug distribution. Specifically, located in the bathroom, towards the left side of the sink, agents found one pile of cash that is estimated to be approximately $25,270. Next to the cash, agents found a money counter that was plugged in. Near the money counter, inside a closet, agents found two scales, one of which contained residue.
>
> In the spare bedroom, agents located two cardboard boxes and packaging material. Inside one of the boxes, they found three vacuum sealed bags, which contained approximately 250 grams of cocaine. Two other bags uncovered approximately 396 grams of marijuana. The cocaine and marijuana were field tested by agents and yielded positive results for the presence of cocaine and marijuana.
>
> Agents also located in a safe inside the apartment, which contained approximately $29,550. In total, approximately $54,820 was seized from the residence.
>
> Agents received consent to search a BMW vehicle parked outside the residence. Inside that vehicle, law enforcement found between 100-200 fentanyl pills, and approximately four kilograms of marijuana in the trunk of the car. Malara was arrested at the residency and was advised of his *Miranda* warnings. Malara admitted that the cocaine was his but stated it was only for personal use.

The presentence report calculated an advisory guidelines range of 97 to 121 months based on Malara's total offense level of 29 and his criminal history

category of II. (Crim. Doc. 79 at ¶ 114.) The district court sentenced Malara to a guidelines sentence of 108 months. (Crim. Doc. 81.)

Malara appealed and received new counsel. (Crim. Docs. 84 and 86.) On appeal, he argued that his former counsel was ineffective at sentencing. *United States v. Malara*, No. 22-10856, 2022 WL 6382288, at *14–24 (11th Cir. Oct. 3, 2022). The circuit court, however, declined to consider his ineffective-assistance claim because the record was not sufficiently developed. *United States v. Malara*, No. 22-10856, 2023 WL 2128801, at *3 (11th Cir. Feb. 21, 2023). Concluding that Malara could not "'circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance,'" the circuit court enforced the valid sentence-appeal waiver in the plea agreement and dismissed the appeal.  *Id*. at *2 (quoting *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005)).

Malara now moves to vacate his conviction and sentence and claims that counsel was ineffective for not (1) advising him that the sentence-appeal waiver in his plea agreement barred him from raising an ineffective-assistance-of-counsel claim, (2) not lodging a relevant-conduct objection to the inclusion of methamphetamine in his sentencing guidelines calculation, and (3) not investigating and challenging the validity of the search of his mother-in-law's car and the seizure of drugs from that search. (Civ. Docs. 14, 15, and 18.)

## II.    Legal Standards

Section 2255 allows a federal prisoner to "bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215–16 (11th Cir. 2014). But "[o]nce

the defendant's chance to appeal has been waived or exhausted, [a court is] entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (*per curiam*) (citing *Frady*, 456 U.S. at 165). Because collateral review is not a substitute for direct appeal, a defendant must raise on direct appeal all available claims. Relief under Section 2255 is reserved "for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sep. 1981)).  For example, a claim of ineffective assistance of counsel is a claim that "should usually be raised in a motion under 28 U.S.C. § 2255." *United States v. Curbelo*, 726 F.3d 1260, 1267(11th Cir. 2013).

"[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains, *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to

4

> *Strickland*, first, the defendant must show that counsel's
> performance was deficient. This requires showing that
> counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment. Second, the defendant must show that the
> deficient performance prejudiced the defense. This requires
> showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable.
> *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Malara must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Malara must show "a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. A prisoner cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)); *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

III.    **Analysis**

    A.    **Ground One**

Malara claims that counsel was ineffective for not advising him that the sentence-appeal waiver in his plea agreement barred him from raising a claim that counsel rendered constitutionally ineffective assistance at sentencing. (Civ. Doc. 14 at 4; Civ. Doc. 15 at 6–10.) He points to counsel's affidavit in which counsel acknowledges he did not advise Malara of a waiver of this right (Civ. Doc. 15 at 27):

> Although I went over the waiver with Mr. Malara, I did not advise Mr. Malara that he was waiving the right to raise an ineffective assistance of counsel claim concerning my representation of him at sentencing by entering into the plea agreement, nor did I intend for Mr. Malara to waive an ineffective assistance of counsel claim by entering into his plea agreement.

Malara argues that he did not knowingly waive his right to raise an ineffective-assistance claim because counsel neglected to advise him of such waiver before entering the plea agreement.

Malara is entitled to no relief on this claim because he misunderstands the terms of the plea agreement, the law governing claims of ineffective assistance of counsel, and the circuit court's dismissal of his direct appeal. The plea agreement contains no waiver of Malara's right to raise a claim of ineffective assistance of counsel. Rather, the plea agreement contains the following sentence-appeal waiver (Crim. Doc. 47 at 12–13) (emphasis in original):

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the

defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

On direct appeal, Malara argued that counsel was ineffective for not lodging a relevant-conduct objection at sentencing when the district court held him accountable for 111.6 grams of methamphetamine sold to a co-conspirator. *United States v. Malara*, No. 22-10856, 2023 WL 2128801, at *1 (11th Cir. Feb. 21, 2023). The United States moved to dismiss the appeal based on the sentence-appeal waiver and argued that Malara was recasting a sentencing challenge as an ineffective-assistance claim to avoid the valid sentence-appeal waiver. *Id*.

The circuit court described the United States' argument as "well taken" and found that the sentence-appeal waiver is valid. *Id*. at *3. To the extent Malara challenged the district court's application of the sentencing guidelines, the circuit court found his challenge was barred by the sentence-appeal waiver and dismissed the appeal. *Id*. at *2. The circuit court "decline[d] to address the merits of [Malara's ineffective-assistance claim] because it was not raised before the district court and the record [was] not developed enough to assess the adequacy of counsel's representation." *Id*. at *3 (citing *Massaro v. United States*, 538 U.S. 500, 504–05 (2003) and *United States v. Bender*, 290 F.3d 1279, 1284 (2002)). The circuit court concluded, "Malara is free to bring this ineffective assistance claim anew in a § 2255 proceeding." *Id*.

8

The circuit court "'will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record.'" *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010) (quoting *Bender*, 290 F.3d at 1284). Rather, "[t]he preferred means for deciding a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion, 'even if the record contains some indication of deficiencies in counsel's performance.'" *Id*. (quoting *Massaro*, 538 U.S. at 504).

Malara's claim in Ground One is based upon his erroneous belief that the sentence-appeal waiver in his plea agreement barred him from raising an ineffective-assistance claim. Those claims were not barred, and, in fact, are properly before the district court in this § 2255 action. The circuit court declined to consider these claims—not because the claims were barred or waived—but because the record on appeal was not sufficiently developed. Malara cannot show counsel was ineffective for not advising him that his ineffective-assistance counsel claims were barred because the plea agreement contains no term barring those claims and they were not, in fact, barred or waived.

**B.      Ground Two**

Malara claims that counsel was ineffective at sentencing for not lodging a relevant-conduct objection to the inclusion of methamphetamine in his sentencing guidelines calculation. (Civ. Doc. 14 at 5; Civ. Doc. 15 at 11–19; Civ. Doc. 18 at 2–3.)

The presentence report held Malara for distributing the cocaine, marijuana, and fentanyl that law enforcement seized during the January 21, 2021 search of his home and the car parked outside his home belonging to his mother-in-law. (Crim.

Doc. 79 at ¶¶ 23–25.) Although he was not charged with distributing methamphetamine, the presentence report also held Malara responsible for distributing 111.6 grams of methamphetamine, or "ice," to Tarrad Russell, an unindicted co-conspirator earlier that month, on January 5, 2021. (*Id*. at ¶¶ 21–22.) In total, he was responsible for "249.8 grams of cocaine, 5.69 kilograms of marijuana, 111.6 grams of 'Ice,' and 11.43 grams of fentanyl[,]" or 2,316.23 kilograms of converted drug weight. (*Id*. at ¶¶ 27 and 34.) Under U.S.S.G. § 2D1.1(c)(5), the presentence report calculated a base offense level of 30 because Malara's conduct involved between 1,000 and 3,000 kilograms of converted drug weight. (*Id*. at ¶ 34.)

Before sentencing, counsel objected to the inclusion of the drugs that Malara sold to Russell on January 5, 2021, on the grounds that he sold Russell exotic marijuana—not methamphetamine. (Crim. Docs. 76 at 1–2 and Crim. Doc. 79 at 31–32.) To support this objection, counsel filed an affidavit by Russell, in which he averred that on January 5, 2021, he purchased "four ounces of marijuana only, not methamphetamine" from Malara. (Crim. Doc. 76 at 6.) At sentencing, counsel repeated his objection that Malara sold Russell exotic marijuana, and the seized methamphetamine was unrelated to that transaction. (Crim. Doc. 97 at 148–156.)

After considering law enforcement testimony, Russell's affidavit, and the parties' arguments, the district court overruled counsel's objection (Crim. Doc. 97 at 159–62):

> I find that the government has carried its burden by a preponderance that the drugs involved in the January 5th deal with Mr. Tarrod Russell were indeed for methamphetamine. I base that ruling on several things:

First, the overall timeline and sequence of the calls between Mr. Nurse, Mr. Malara, and then Mr. Russell corroborate the government's understanding that it was indeed methamphetamine that he was getting from Nurse to then redistribute to Mr. Russell.

I also take into account Deputy Phelps' expertise in the drug trafficking trade. His understanding of the terms that were used.

With regards to the dispute over the short phrase Tina, I do not find that the lyrics referring to Christina Aguilera have any connection to either Tina being a reference to cocaine or meth. It seems like that's quite a stretch and there's been no evidence to actually tie . . . from the song lyrics, the term Tina to be referred to cocaine. Whereas the agent testified that at least in this drug group, particularly Mr. Thomas only ever used the word to refer to meth.

I also take into account the agent's testimony that although street values vary for the amount of meth, and that is reflected with Defense Exhibit 19 that there are different costs for meth, but that the street value in Tampa at this time was approximately $300, which corresponds to the transcripts from the recorded calls. It also corresponds obviously, then, to the $1200 for four ounces times 300 equals 1200.

Most of all, . . . these are transcripts by drug dealers who presumably know they're being recorded or at least suspect that . . . they're not necessarily speaking in full English sentences, I find that the recovery from the Mr. Russell car stop the most convincing of the evidence. The only thing that agents saw thrown out of the vehicle was recovered and it was, I believe Deputy Barton said, about 41 ounces of methamphetamine. There are no other instances of things being seen thrown out the window. I understand defense's point that there are blind spots and it's possible, but I don't think that possibility overcomes what I think the government has proved by a preponderance here.

And additionally, I find it very convincing that there was no other drugs found in the vehicle or on Mr. Russell's person. And as Deputy Barton testified, he said that six to eight deputies spent about 45 minutes in a small area, I believe he estimated it was 30-by-30 feet, and it wasn't heavily thick

vegetation area. So if there were other drugs that were disposed of before Mr. Russell was apprehended, they did not find them.

I take into account, too, that as a general matter, . . . the defendant sold marijuana in one-pound increments. I don't dispute that some of the bags, although the majority, I think five of the ones recovered from the red bag from the trunk at the search warrant, but that some of the bags had less than a pound, and I take the defense's point, it's probably not for personal use if it's being transported with the rest of the drugs. And like I said, there is evidence that he did sell smaller quantities of marijuana on occasion. But I don't think that undermines that it was meth that was used in the January 5th transaction.

I will say I'm somewhat surprised that defense considers the affidavit to be the most compelling evidence. The Russell affidavit is lacking in detail. I do not find it credible that he would pay $300 per ounce if he is a drug dealer, particularly if he's a meth drug dealer to pay over market price for marijuana.

I also can take into account the fact that he is a convicted felon who himself had pled guilty to distributing meth. So I just do not find the affidavit to be particularly credible.

For these reasons I am going to overrule the objection.

Now, Malara claims that counsel was ineffective because he should have lodged a relevant-conduct objection rather than an objection to the type of drug involved in the January 5, 2021 sale to Russell. Malara argues that the charged offense and the sale to Russell were not "part of a single course of conduct simply because they both involve drug distribution." (Civ. Doc. 15 at 14, quoting *United States v. Maxwell*, 34 F.3d 1006, 1010 (11th Cir. 1994).) He argues that the charged offense differs from the sale to Russell in terms of the co-conspirators involved, methodology, and timing. Specifically, he contends (although, incorrectly) that:

the charged offense involved different co-conspirators than the sale to Russell; he was charged with distributing drugs through the U.S. Postal Service, while the sale to Russell occurred in person; and, the charged offense involved multiple transactions over a period of time, while the sale to Russell occurred only once. (*Id.* at 16–19.) Had counsel lodged a relevant-conduct objection, Malara argues, there is a reasonable probability the objection would have been sustained and he would have received a shorter sentence. (Civ. Doc. 15 at 18.)

Malara cannot show counsel performed deficiently when he objected to the type of drug involved in the sale to Russell rather than objecting to the sale as irrelevant to the charged offense, by merely disagreeing with counsel's chosen strategy. "[The circuit court] has long held that the fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel." *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010). The record shows counsel strategically chose to argue that Malara sold Russell exotic marijuana—not methamphetamine—and counsel supported that objection with a sentencing memorandum, an affidavit by Russell, and oral argument at the sentencing hearing. Although the district court ultimately overruled counsel's objection, Malara fails to show that "no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315; *see also Diaz v. United States*, 799 F. App'x 685, 689–90 (11th Cir. 2020) (concluding the defendant could not show counsel's failure to lodge a relevant-conduct objection constituted deficient performance because "[t]he scope and contours of § 1B1.3(a) are not settled in this circuit[,]" in the context of a sentencing enhancement applied under U.S.S.G. § 2G1.2(b)(2)(A)). Malara's bare claim "that a different strategy would have been better does not meet his burden under

13

*Strickland.*" *Lukehart v. Sec'y, Fla. Dep't of Corr.*, 50 F.4th 32, 47 (11th Cir. 2022) (citing *Ward*, 592 F.3d at 1164 ("[C]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy.")).

Additionally, Malara cannot show he was prejudiced by counsel's performance. To demonstrate prejudice, Malara must show "a reasonable probability that the result of the proceeding—i.e., the length of his sentence— would have been different absent counsel's allegedly deficient performance." *United States v. Simmons*, 799 F. App'x 718, 722 (11th Cir. 2020) (citing *Griffith v. United States*, 871 F.3d 1321, 1330 (11th Cir. 2017)).

"At sentencing, the district court will calculate a defendant's total offense level by considering 'all relevant conduct attributable to the defendant.'" *United States v. Perry*, 14 F.4th 1253, 1277 (11th Cir. 2021) (quoting *United States v. Maddox*, 803 F.3d 1215, 1221 (11th Cir. 2015)). Under U.S.S.G. § 1B1.3(a)(1)(A), relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant[.]" And, when the offense involves jointly-undertaken criminal activity, the district court also considers all acts and omissions that were within the scope of that activity, in furtherance of that activity, and reasonably foreseeable in connection with that activity that occurred during the commission of the offense of conviction. U.S.S.G. § 1B1.3(a)(1)(B).

"Relevant conduct need not be included in the indictment—a district court may consider uncharged conduct if it finds that the government proved the conduct by a preponderance of the evidence." *Perry*, 14 F.4th at 1277 (citations

14

omitted); *see also United States v. Ignancio Munio*, 909 F.2d 436, 439 (11th Cir. 1990) ("[C]onduct not contained in the indictment may be considered at sentencing."). "In evaluating relevant conduct under section 1B1.3, [the court] consider[s] the similarity, regularity, and temporal proximity between the count of conviction and an extrinsic drug offense." *United States v. Whitsett*, 802 F. App'x 526, 531 (11th Cir. 2020) (citing *Maxwell*, 34 F. 3d at 1011).

Malara cannot show a reasonable probability that the district court would have sustained a relevant-conduct objection and imposed a shorter sentence absent counsel's allegedly deficient performance. His methamphetamine sale to Russell was not distinct from the charged offense to which he pleaded guilty: distributing and possessing with intent to distribute cocaine, fentanyl, and marijuana. Rather, the admitted facts contained in the plea agreement and presentence report describe "a pattern of [drug distribution] that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing." *Maxwell*, 34 F.3d at 1010–11 (discussing the commentary to § 1B1.3).

Contrary to Malara's assertions, he was not charged with, and did not plead guilty to, distributing drugs to specifically identified co-conspirators that excluded Russell. In the plea agreement, Malara admitted to "discussing the purchase, distribution and sale of controlled substances" with "several co-conspirators" between "October 2020 and February 2021." (Crim. Doc. 47 at 15.) The presentence report describes law enforcement's ongoing surveillance of Malara and three co-conspirators, including Russell, from March 2020 to the execution of the search warrant on January 21, 2021.[1] (Crim. Doc. 79 at ¶¶ 10–26.); *see Whitsett*, 802 F.

---

[1] Except for his objection to the kind of drug involved in the sale to Russell, Malara admitted these facts for sentencing purposes. *See United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) ("It is

App'x at 533 (concluding that the district court erred in finding that drugs seized a year a part constituted relevant conduct because the conduct involved different co-conspirators and "there [was] no evidence suggesting some unique (or more specific) purposes that would tie the two offenses together").

Furthermore, the sale to Russell did not differ in terms of methodology. Law enforcement intercepted parcels containing cocaine, marijuana, and fentanyl, as well as methamphetamine. (Crim. Docs. 79 at ¶ 10.) And, Malara met in person with, and spoke on the phone with, the three co-conspirators, including Russell, to execute the drug transactions. (*Id*. at ¶¶ 10–22.) Finally, the sale to Russell was not temporally remote from the charged offense. Both the sale to Russell and the seizure of the cocaine, fentanyl, and marijuana occurred in the same month: January 2021. *See United States v. Blanc*, 146 F.3d 847, 853–54 (11th Cir. 1998) (holding that the district court did not err in finding that two fraud schemes were not relevant conduct because the frauds involved different subject matter and different parties and were separated by a few years).

Accordingly, because a relevant-conduct objection would have failed, Malara cannot show he was prejudiced by counsel's performance in not lodging such an objection. *See Forrester v. United States*, 349 F. App'x 528, 531–32 (11th Cir. 2009) (concluding that the defendant failed to prove he was prejudiced by counsel's failure to lodge a relevant-conduct objection because the district court correctly calculated the base offense level and the objection would not have altered the calculation).

---

the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes.").

### C.      Ground Three

Malara claims that counsel was ineffective for not investigating and challenging the validity of the search of his mother-in-law's car and the seizure of drugs from that search. He argues that the search of the car was illegal because the agents executing the search warrant of his home lacked permission to search the car. (Civ. Doc. 15 at 19–23 and Civ. Doc. 18 at 3–4.) Malara files an affidavit of his wife in which she states she "did not provide any consent, written or otherwise, for search of the locked BMW, including the trunk." (Civ. Doc. 15 at 48.)

Malara waived this claim with his knowing and voluntary guilty plea.[2] After pleading guilty, a § 2255 movant may not raise claims relating to the alleged deprivation of constitutional rights that occurred before the entry of the guilty plea, but may raise only jurisdictional issues, *United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003), attack the voluntary and knowing character of the guilty plea, *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from counsel in deciding to plead guilty, *United States v. Fairchild*, 803 F.2d 1121, 1123 (11th Cir. 1986). All pre-plea ineffective-assistance-of-counsel claims are waived by the entry of a guilty plea. *See Wilson*, 962 F.2d at 997.

A guilty plea also prevents a defendant from challenging the constitutionality of "case-related government conduct that takes place before the plea is entered." *Class v. United States*, 583 U.S. 174, 182 (2018) (citing *Haring v. Prosise*, 462 U.S. 306, 320 (1983) (holding that a valid guilty plea "results in the defendant's loss of any meaningful opportunity he might otherwise have had to

---

[2] Malara asserts no challenge to the knowing and voluntary nature of his guilty plea in this § 2255 action.

challenge the admissibility of evidence obtained in violation of the Fourth Amendment")). Thus, once a defendant enters a knowing and voluntary guilty plea, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

At the plea hearing, Malara specifically acknowledged his understanding of this waiver. The Magistrate Judge explained, "By pleading guilty, you waive and give up your right to challenge the way in which the government obtained any evidence, statement or confession." (Crim. Doc. 96 at 9–10.) Malara responded with an affirmative "Yes, sir," when he Magistrate Judge asked "Do you fully understand your rights and the rights you would be giving up by pleading guilty?" (*Id*. at 10.) A defendant's statements at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Malara advances no argument or evidence to disavow his sworn acknowledgment that he understood he was waiving his right to challenge the manner in which the United States obtained evidence against him.

And, even if Malara had not waived this claim, it lacks merit. A defendant can establish ineffective assistance of counsel by showing that counsel unreasonably failed to move to suppress evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). To prevail on such a claim, "the defendant must . . . prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id*. at 375. "If a search was

18

constitutional, then counsel is not obligated to move to suppress the evidence or dismiss the indictment and a defendant is not prejudiced by counsel's failure to do so." *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2006). "A consensual search is constitutional if it is voluntary; if it is the product of an 'essentially free and unconstrained choice.'" *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)).

The record shows that no Fourth Amendment violation occurred because Malara's wife consented to law enforcement's search of her mother's car. During a preliminary hearing, Special Agent Adam Kerr testified that, while executing the search warrant, a law enforcement K9 altered to the presence of drugs near the car parked outside Malara's home. (Crim. Doc. 33 at 11.) He testified that Malara's wife consented to the search of the car. (*Id*. at 11 and 16.) In the plea agreement, Malara admitted that "[a]gents received consent to search a BMW vehicle parked outside the residence" from which law enforcement seized "100-200 fentanyl pills and approximately four kilograms of marijuana in the trunk of the car." (Crim. Doc. 47 at 16.) At the plea hearing, Malara confirmed he had an opportunity to review the factual basis in the plea agreement and agreed that all the facts contained therein were true. (Crim. Doc. 96 at 7 and 22–23.) And, at sentencing, Malara lodged no objection to, and therefore admitted, the facts as recited in the presentence report including that "Malara's wife . . . gave agents consent to search [the car]." (Crim. Doc. 79 at ¶ 25.)

Malara now offers an affidavit from his wife in which she states the opposite—that she did not consent to the search of her mother's car. However, he offers no explanation for the change in his story, nor does he offer any explanation

19

to disavow his prior admissions under oath to the factual basis supporting his guilty plea. *See Winthrop-Redin*, 767 F.3d at 1217 ("The district court is entitled to discredit a defendant's newly-minted story . . . when that story is supported only by the defendant's conclusory statements" and is contradicted by the record of the change-of-plea colloquy.).

Accordingly, because Malara's wife consented to the search of her mother's car, the search was constitutional, and Malara cannot establish a Fourth Amendment violation. As a result, he cannot show counsel was constitutionally ineffective for not lodging a meritless challenge to the search of the car. *See Hollis v. United States*, 958 F.3d 1120, 1124 (11th Cir. 2020) (explaining that counsel is not constitutionally ineffective for not raising a meritless claim).

## IV.    No Certificate of Appealability

Malara is not entitled to a certificate of appealability (COA). A prisoner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Malara must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Malara is entitled to neither a certificate of appealability nor an appeal in forma pauperis.

## V.   Conclusion

Malara's amended motion under § 2255 to vacate, set aside, or correct his sentence (Civ. Doc. 14) is **DENIED** and a certificate of appealability is **DENIED**. Leave to appeal in forma pauperis is similarly **DENIED**. Malara must obtain permission from the circuit court to appeal in forma pauperis. Malara's motion for an expedited ruling and an evidentiary hearing (Civ. Doc. 19) is **DENIED AS MOOT.** The clerk is directed to enter a **JUDGMENT** against Malara, **CLOSE** this case, and enter a copy of this order in the criminal case. The clerk is directed to **TERMINATE** dockets 103 and 105.

**ORDERED** in Tampa, Florida, on October 21, 2024.


Kathryn Kimball Mizelle
United States District Judge